**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANNA C., individually and on behalf of K.C.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 24-6313** |
| | : | |
| **COLONIAL SCHOOL DISTRICT** | : | |

<u>**MEMORANDUM OPINION**</u>

**Henry, J.**                                                                      **February 4, 2026**

Pending before the Court is Plaintiff's Motion for Attorneys' Fees and Costs (ECF No. 34) ("Mot."). Upon consideration of the Motion, Defendant's Response in Opposition thereto (ECF No. 40) ("Opp."), Plaintiff's Reply in Further Support of Her Motion (ECF No. 53) ("Reply"), Plaintiff's Supplemental Submission in Support of Her Motion (ECF No. 60) ("Supp."), and after oral argument held on December 15, 2025, the Motion is now ripe for my consideration.

## I.    <u>BACKGROUND</u>

The underlying facts of the case leading up to the Motion are not of great relevance, because Defendant does not challenge the fact that Plaintiff succeeded on the underlying action seeking a free appropriate public education ("FAPE") for her daughter under the Individuals with Disabilities Education Act ("IDEA"). I will therefore provide only a brief recitation of the facts.

Plaintiff Anna C. adopted K.C., who was born in India and spent the first eight years of her life in an Indian orphanage without receiving formal education. Mot. at 5. At that time, K.C. did not speak or understand English, but she learned over time. *Id.* K.C. struggled in school and was eventually diagnosed with multiple language-based learning disabilities, including "triple deficit dyslexia" and a speech and language impairment. *Id.*

1

K.C. had been attending AIM Academy, a "private school that provides research-based literacy instruction to children with learning disabilities." *Id.* at 4.  Plaintiff and K.C. moved into the Colonial School District for the 2022-2023 school year. *Id.* at 5.  In January 2023, Plaintiff asked Defendant to prepare an IEP for the 2023-2024 school year, advising them that if they could not offer an appropriate IEP, she would enroll K.C. again at AIM. *Id.*  Defendant did not offer a timely IEP, so Plaintiff enrolled K.C. at AIM, where K.C. thrived. *Id.*

In February 2024, Plaintiff again advised Defendant that she intended to enroll K.C. at AIM, and after Defendant failed to offer an IEP reasonably calculated to provide FAPE, Plaintiff again enrolled K.C. at AIM for the 2024-2025 school year. *Id.* at 5-6.

In April 2024, Plaintiff filed an IDEA due process complaint against Defendant, seeking tuition reimbursement for K.C.'s placement at AIM for the 2023-2024 school year, and which she amended in May of 2024 to include tuition reimbursement for the 2024-2025 school year. *Id.* at 6.  The case proceeded to a Pennsylvania Special Education Due Process Hearing Officer (the "Hearing Officer"), who issued a decision in August 2024 awarding Plaintiff tuition reimbursement for the 2023-2024 school year, but denying reimbursement for the 2024-2025 school year pursuant to 20 U.S.C. § 1412(a)(10)(C). *Id.* at 8.  In November 2024, Plaintiff filed the instant action, appealing the Hearing Officer's decision to deny tuition reimbursement for the 2024-2025 school year and seeking attorneys' fees and costs. *Id.* at 9.  Then, on January 16, 2025, Defendant's board approved a settlement agreement which provided that it would pay K.C.'s private school tuition for the 2024-2025 and 2025-2026 school years and reimburse Plaintiff for any tuition paid for the 2023-2024 and 2024-2025 school years. *Id.*  The agreement thus resolved the claim appealing the tuition reimbursement decision in the Complaint, but it did not resolve Plaintiff's claim for attorneys' fees and costs. *Id.*  Thus, now before the Court is Plaintiff's Motion for Attorneys' Fees and Costs.

## II.   DISCUSSION

### A.  Legal Standard

The IDEA provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability."   20 U.S.C.  § 1415(i)(3)(B)(i)(I).   "In determining whether an award is reasonable, a court first calculates the lodestar by multiplying the reasonable hours worked by a reasonable hourly rate."  *Augustyn v. Wall Twp. Bd. of Educ.*, 139 F.4th 252, 259 (3d Cir. 2025).  The lodestar is strongly presumed to be reasonable.  *See Souryavong v. Lackawanna Cnty.*, 872 F.3d 122, 128 (3d Cir. 2017).  "After calculating the lodestar, the court may deviate from it, but only in the 'rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'"  *Id.* (quoting *Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542, 544 (2010)).

### B.  Hourly Rates

Plaintiff bears the burden of establishing that its requested hourly rates are reasonable.  *See Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001).  "[A] reasonable hourly rate is calculated according to the prevailing market rates in the relevant community."  *Id.*  The Court "assess[es] the experience and skill of the prevailing party's attorneys and compare[s] their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Id.* (internal quotations omitted).  "The starting point in determining a reasonable hourly rate is the attorneys' usual billing rate . . . ."  *Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1185 (3d. Cir 1995).  The hourly rate the Court considers is "the rate at the time of the fee petition, not the rate at the time the services were performed."  *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001).  "When there are disputes over what constitutes a reasonable rate, '[t]he district court may not dispose of such a factual

3

question based upon a generalized sense of what is customary or proper, but rather must rely upon the record.' . . . It is impermissible for a court to 'simply rely[ ] on the hourly rate set by the court for [the attorney seeking fees] in previous cases in which he has appeared.'" *Pocono Mountain Sch. Dist. v. T. D.*, No. 22-cv-1787, 2023 WL 2983501, at *4 (3d Cir. Apr. 18, 2023) (internal citations omitted).

Plaintiff requests the following hourly rates for each of the four attorneys that worked on the case,[1] supported by their own declarations, declarations from other Philadelphia education attorneys, survey data, and former IDEA fee decisions: $685 for David J. Berney, $315 for Michael Joseph, $315 for Lindsay Burrill-VanDellen, and $260 for Princess Diaz-Birca. *See* Mot. at 19.

Mr. Berney is the founding partner of Berney & Sang. He is a University of Pennsylvania Law School graduate who "has successfully litigated hundreds of education law cases," with over 25 years of experience. *Ida D. v. Rivera*, No. 17-cv-5272, 2019 WL 2615481, at *7 (E.D. Pa. June 26, 2019); Mot. at 10. Mr. Berney was lead counsel in this case. Mot at 11. Mr. Joseph is a 2019 University of Pennsylvania Law School graduate who began working for Berney & Sang in education cases in September of 2020. *See* Mot. at 11-12; Ex. V at ¶ 6.[2] Ms. Burrill-VanDellen is a 2020 Villanova University Charles Widger School of Law graduate and a former law clerk for the Honorable R. Barclay Surrick of the United States District Court for the Eastern District of Pennsylvania and the Honorable James J. Ferrelli, J.S.C. in the New Jersey Superior Court. Mot. at 12. She began practicing education law in September of 2023. *Id.*, Ex. O. at ¶ 6. Ms. Diaz-Birca is a 2023 Northeastern Law School graduate. Mot. at 12. She has practiced education law since September of 2023. *Id.*

---

[1] Six Berney & Sang attorneys assisted on this case, but Plaintiff only seeks attorney's fees for four of those six attorneys. *See* Mot. at 9-10.

[2] Citations to exhibits are for the exhibits attached to the Motion for Attorneys' Fees and Costs, found at ECF No. 34-1, unless indicated otherwise.

Plaintiff relies on declarations by each of these attorneys that, as of January 2025, the requested rates are the rates they charge to paying clients, *see* Ex. K at ¶ 35, Ex. O at ¶ 7, Ex. P at ¶ 8, Ex. V at ¶ 7, which is further supported by samples of firm bills and client payments reflecting those billing rates for Mr. Berney and Ms. Burrill-VanDellen, *see* Ex. Q. Additionally—and, more persuasively, as "[a]ttorneys may not rest on their own affidavits to support a claimed rate[, but] must submit evidence that the requested rates fall within the norm of attorneys in the relevant community," *see Sch. Dist. of Philadelphia v. Kirsch*, No. 14-cv-4910, 2017 WL 131808, at *3 (E.D. Pa. Jan. 11, 2017), *aff'd* 722 F. App'x 215 (3d Cir. 2018) (internal quotations omitted)—Plaintiff submits declarations of a number of "prominent education and civil rights attorneys who practice in Philadelphia" who each aver that the requested rates are reasonable. *See* Mot. at 21-23; Ex. C at ¶¶ 55, 57-58 (as to all four attorneys); Ex. D at ¶¶ 9, 11-13 (as to all four attorneys); Ex. E. at ¶¶ 23, 27 (as to Mr. Berney and Ms. Burrill-VanDellen); Ex. H at ¶¶ 22-24 (as to all four attorneys); Ex. L at ¶¶ 10, 13-14 (as to Mr. Berney, Ms. Diaz-Birca, and Ms. Burrill-VanDellen); Ex. M at ¶¶ 11, 15 (as to Mr. Berney and Ms. Diaz-Birca); Ex. N at ¶ 41 (as to Mr. Berney). I find these declarations especially useful in determining the "prevailing market rates in the relevant community." *Maldonado*, 256 F.3d at 184.

Next, Plaintiff points to the Community Legal Services ("CLS") fee schedule, which has been widely accepted in the Third Circuit as an acceptable benchmark in determining appropriate billing rates in the Philadelphia area.[3, 4]  *See id.* at 187; *Rayna P. v. Campus Cmty. Sch.*, 390 F.

---

[3] Plaintiff also references the 2017 National Law Journal Survey. I decline to rely on this survey primarily because it is nearly seven years old.

[4] Defendant would have me look to the NAFLA 2024 Litigation Hourly Rate Survey instead, arguing that an attorney at a small firm in Philadelphia with 18 years of experience should have an hourly rate of $400-550 per hour. *See* Opp. at 11. According to Defendant, the NAFLA report shows that "74% of small firm attorneys charge less than $700 per hour," "61% of Philadelphia attorneys charge less than $700 per hour, which does not exclude high-rate Big Law firm attorneys," "[o]nly 10.12% of plaintiff's attorneys charge between $651-700 per hour," and "70% of attorneys with 18 years of relevant experience charge less than $700." *Id.* I fail to see how this is persuasive, considering Mr. Berney is indeed asking for a rate of less than $700 per hour, making him fall into the majority for

Supp. 3d 556, 565 (D. Del. 2019) (collecting cases).  The applicable CLS rates in this case are $235-260 for attorneys with less than two years of experience, $265-315 for attorneys with two to five years of experience, and $735-850 for attorneys with more than twenty-five years of experience.[5]  *See* Attorney Fees, Community Legal Services, https://clsphila.org/about-community-legal-services/attorney-fees/ (last visited January 29, 2026).

The requested rate of $685 for Mr. Berney, who has over twenty-five years of experience, falls well below the CLS rate of $735-850 for attorneys with his degree of experience.  Mr. Joseph, who had nearly five years of experience in education law at the time of the fee petition, requests $315 per hour.  This is at the upper end of the CLS range with two to five years of experience, which I find to be appropriate given his near graduation to the next CLS experience bracket.  Ms. Burrill-VanDellen had nearly two years of education law practice at the time of the fee petition, plus three years as a judicial law clerk, and similarly seeks $315.  Although her experience in education law is slightly below two years, her experience as a judicial law clerk is commendable, and I find the two-to-five-year CLS experience bracket appropriate.  That being said, I find $300 a more appropriate rate given the limited nature of her experience in education law.  Finally, Ms. Diaz-Birca had nearly two years of experience in education law at the time the fee petition was filed.  Given that she had also nearly graduated to the next experience bracket when the petition was filed, I find her requested rate of $260, which is at the upper end of the recommended rates for attorneys with fewer than two years of experience, is appropriate.

Finally, Plaintiff cites a number of cases that indicate the requested rates are reasonable. *See* Mot. at 25-26.  Between these precedents, the affidavits from Plaintiff's counsel and attorneys

---

three of the cited statistics and, as for the fourth, given his years of experience, I am not uncomfortable with including him in the 10.12% of plaintiff's attorneys who charge between $651 and 700 per hour.

[5] The CLS fee schedule became effective in January 2023.  These rates would presumably be slightly higher adjusted for inflation.

with experience in education law, and the widely-adopted CLS fee schedule, I find that Plaintiff's requested rates—with the slight modification discussed above for Ms. Burrill-VanDellen—are reasonable.[6]

### C. Number of Hours Reasonably Expended

The second part of the lodestar analysis is to determine the number of hours Plaintiff's attorneys reasonably expended on the case. The Court may reduce an attorney's hours if they are "excessive, redundant, or otherwise unnecessary," if they are "spent litigating claims on which the party did not succeed and that were 'distinct in all respects from' claims on which the party did succeed," or if they are inadequately documented. *See Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (internal quotations omitted).

In her fee petition, Plaintiff noted that she voluntarily deducted 109.1 hours of attorney time, including but not limited to the elimination of hours for two attorneys, Ms. Jennifer Sang and Ms. Claire Grandison. *See* Mot. at 27. This reduction decreased the lodestar by over $50,000. *Id.*

In their opposition brief, Defendant provides sixteen categories of hours expended that it believes should be reduced or eliminated as unreasonable. Exhibit N to Defendant's Opposition brief provides a breakdown of the specific line entries to which Defendant objects for each category, including an explanation for why each line item should be eliminated. In her Reply brief, Plaintiff takes the position that Defendant has waived its argument that Plaintiff's counsel expended an unreasonable amount of time on the matter because Defendant may not use an exhibit to make legal argument. *See* Reply at 13-14. It is true that exhibits may not be used to make a legal argument and exceed page limitations, *see, e.g.*, *Monec Holding AG v. Motorola Mobility,*

---

[6] I note that Defendant argues that I should not award Plaintiff's requested rates because of underfunding issues in Pennsylvania school districts. Although I understand this concern, the Third Circuit has instructed that courts should not consider the losing party's limited resources in awarding attorney's fees. *See Augustyn*, 139 F.4th at 262.

*Inc.*, No. 11-cv-798, 2014 WL 4402825, at *1-2 (D. Del. Sept. 5, 2014), so I will defer to the reasons set forth in the briefing for eliminating time entries and will refer to Exhibit N only to determine which specific time entries Defendant takes issue with for each category.

### i.  *All hours spent on the December 22, 2023 due process complaint.*

First, Defendant would have me eliminate all hours spent on the December 22, 2023 due process complaint, totaling 3.5 hours for Mr. Berney and 0.4 hours for Ms. Burrill-VanDellen, because Plaintiff did not prevail at the hearing. *See* Opp. at 15.  Plaintiff replies that she filed the December 22, 2023 complaint because the Defendant failed to produce all of K.C.'s records, which parents have a right to access under the IDEA, and which were necessary to understand whether K.C.'s school program was appropriate.  Reply at 18-19.  Plaintiff further notes that Defendant's characterization that Plaintiff did not prevail is inaccurate, as the parties resolved the complaint without a hearing and Defendant agreed to produce the records.  *Id.* at 19 n.75.  I find that the request for records via the due process complaint is relevant to the case at hand and that 3.9 hours spent on it is not unreasonable.

### ii.  *All unreasonable fee entries.*

Defendant says no more in its brief about this category other than that the fees are apparently unreasonable and should be discounted, thus assuming the Court will consider the legal arguments made in Exhibit N as to why certain line entries should be discounted.  *See* Opp. at 15. Defendant takes issue with 11.7 hours of Mr. Berney's time and 0.9 hours of Ms. Burrill-VanDellen's time.  *Id.*  As discussed above, I find it inappropriate to rely on the legal arguments made in Exhibit N and not in the opposition brief.  That being said, Plaintiff agrees to strike half of the objected-to hours in this category, and I find this appropriate.  *See* Reply at 23.  I will thus deduct 5.9 hours from Mr. Berney's time and 0.5 hours from Ms. Burrill-VanDellen's time.

*iii.   All time spent on errata sheets.*

Defendant asks the Court to eliminate all time spent on errata sheets following Plaintiff's 2024 due process hearing because the errata sheets were excessive, unusual, and inaccurate.  Opp. at 15-16; Opp. Ex. Q.  As to this category of time entries, Mr. Berney spent 5.3 hours and Ms. Diaz-Birca spent 15.3 hours, totaling 20.6 hours.  *Id.*  Plaintiff responds that of those 20.6 hours, 12.8 were spent reviewing trial transcripts and the remaining 7.8 were spent creating, reviewing, and communicating about the errata sheets.  *See* Reply at 19-20.  Although I agree with Plaintiff that such time is compensable, I do find the hours excessive, especially because creation of errata sheets is often done concurrently with review of trial transcripts.  I will thus reduce the time spent on errata sheets by 10 hours:  5 from Mr. Berney and 5 from Ms. Diaz-Birca.

*iv.   Time spent with expert witnesses.*[7]

Defendant next asks the Court to "eliminate all time spent retaining and coaching the 'expert witnesses' as excessive," noting that "the Hearing Officer did not rely on these witnesses." Opp. at 16.  I do not find the 69.8 hours Mr. Berney spent consulting with, communicating with, and reviewing the reports of the three experts unreasonable, even if the Hearing Officer did not explicitly rely on them.  A party cannot control what a Hearing Officer does or does not rely upon in making a decision, and it was only diligent of counsel to spend time consulting with and preparing experts to support Plaintiff's case.  *Cf. Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 392 (S.D.N.Y. 2000) (awarding attorneys' fees for 157 hours spent working with a single expert witness who was withdrawn as an expert before trial, because "[s]o long as a reasonable attorney would engage in the work under similar circumstances, the Court will not

---

[7] For this category, Defendant uses the language "all time spent retaining and coaching the 'expert witnesses.'"  I decline to adopt this categorization as argumentative and irrelevant to the issue of whether the time spent was reasonable and instead use the language "time spent with expert witnesses" as a more appropriate categorization.

prevent [the party seeking fees] from recovering their fees"). I will therefore allow the hours Mr. Berney spent working with expert witnesses to remain.

> v. *Time spent with the private school and its witnesses, and with the client and the private school concerning financial aid deadlines.*[8]

Defendant would have me eliminate time "colluding with and influencing the Private School and its witnesses, and the time Berney & Sang spent coaching their client and the Private School on use of the financial aid deadline to pressure the District into a tuition agreement," because they are "unrelated to proving the elements of their claim." Opp. at 16. The disputed time entries seem to show primarily correspondence about K.C.'s enrollment at AIM, identification of witnesses, and record production. *See* Opp. Ex. N. at 27-32. I fail to see how these hours are not relevant to Plaintiff's preparation for the due process hearing concerning the appropriateness of AIM's program for K.C. and whether tuition reimbursement was justified, and I therefore decline to eliminate them.

> vi. *Legal research time spent by Mr. Berney.*

Defendant next asks the Court to discount 5.5 hours of legal research by Mr. Berney, "an experienced attorney who litigates these issues regularly." Opp. at 16. Plaintiff opposes, arguing that legal research is "an essential part of a lawyer's job." Reply at 16 (quoting *Simring v. Rutgers*, 634 Fed. Appx. 853, 861 (3d Cir. 2015). Defendant does not indicate how many hours total Mr. Berney spent on legal research, and I note that Mr. Berney's timesheets are organized

---

[8] For this category, Defendant uses the language "time colluding with and influencing the Private School and its witnesses, and the time Berney & Sang spent coaching their client and the Private School on the use of the financial aid deadline to pressure the District into a tuition agreement." I similarly decline to adopt this categorization and caution Defendant against the use of such inflammatory language without further explanation. Collusion is defined in Black's Law Dictionary as "[a]n agreement to defraud another or to do or obtain something forbidden by law," *see Collusion*, Black's Law Dictionary (12th ed. 2024) and by Merriam-Webster as a "secret agreement or cooperation especially for an illegal or deceitful purpose," *see Collusion*, Merriam-Webster, https://www.merriam-webster.com/dictionary/collusion (last visited January 29, 2026). This is a strong word to use without evidence to show that Plaintiff was attempting to defraud or make an agreement for an illegal or deceitful purpose.

chronologically and not by type of activity.  But upon my review, I have identified that Mr. Berney conducted at least 9 hours of legal research over the span of this case (some legal research was folded into other time entries, such as drafting a document and conducting legal research on the same, which I do not include for these purposes).  *See* Ex. K.  I do not find approximately 9 hours of pure legal research over a case spanning nearly three years unreasonable, even for an attorney with Mr. Berney's experience.  I will not reduce Mr. Berney's hours spent on legal research.

### vii.    *Time spent on the three-page demand letter.*

Defendant asks the Court to discount 4.7 hours from Mr. Berney spent on the demand letter and 0.1 hours from Ms. Burrill-VanDellen.  Upon review of Mr. Berney's and Ms. Burrill-VanDellen's timesheets, it appears that Mr. Berney spent 5.4 hours on the demand letter and Ms. Burrill-VanDellen spent 0.1 hour, totaling 5.5 hours on the three-page demand letter.  See Exs. K, O.  I find it appropriate to slightly reduce this total, but not by as much as Defendant requests.  I will reduce Mr. Berney's time spent on the demand letter by 1 hour and Mr. Burrill-VanDellen's by 0.1 hour.  *Cf. K.S. v. Upper Darby Sch. Dist.*, No. 20-cv-4470, 2021 WL 4262324, at *7 (E.D. Pa. Sept. 20, 2021) (reducing 7.7 hours billed for a 5-page demand letter by half).

### viii.    *All time relating to the second resolution session.*

Defendant asks the Court to eliminate all time relating to the second resolution session because it was "unnecessary and the demand was essentially unchanged[,] and the attorneys had already met for an attorney-only resolution meeting."  Opp. at 16.  Defendant seeks to have 1.3 hours of Mr. Berney's time spent leading up to this resolution session eliminated.  Plaintiff responds that she "wanted to settle, so she insisted on holding the second resolution session in hopes of a compromise."  Opp. at 20.  I agree that Plaintiff "should not be punished" for engaging in settlement negotiations and decline to eliminate the time spent relating to this resolution session.

> ix.   *Time spent on the opening statement.*

Defendant asks the Court to reduce the time Mr. Berney spent on the opening statement as "excessive." Opp at 16. They ask for a reduction of 5.5 hours. Upon my review of Mr. Berney's timesheets, he spent a total of 6 hours on the opening statement. *See* Ex. K. I find this amount slightly excessive and will reduce it by 2 hours.

> x.   *Time spent creating cross-examination questions.*

Defendant disputes the amount of time spent creating cross-examination questions, arguing that the hours spent are excessive for one hour of examination per witness. Opp. at 16-17. Defendant asks for a reduction of 48.4 hours from Mr. Berney. *Id.* Plaintiff responds first that the actual amount disputed is 47.6 hours, because Plaintiff previously voluntarily deducted 0.8 hours of time for one of the disputed tasks. *See* Reply at 16 n.67. Then, Plaintiff correctly points out that many of the entries Defendant disputes under this category as shown in Exhibit N are actually for creation of direct examination questions, not cross-examination questions. *Id.* at 17. I will thus treat direct and cross-examination questions separately.

As for the direct examination questions, upon review of Mr. Berney's timesheet, it appears he spent somewhere around 34 hours on preparing direct examination questions for five witnesses. *See* Ex. K. Defendant disputes 28.1 of them.[9] *See* Opp. Ex. N at 36-38. Thirty-four hours allocated among 5 witnesses is approximately 6.8 hours per witness. I do not find this unreasonable, especially because, as Plaintiff points out, the examination was subject to time constraints, so honing testimony was necessary. I will not reduce the time spent on creation of direct examination questions.

---

[9] Mr. Berney's line-item entries were for the most part clear as to whether they related to direct or cross examination, with one exception. On July 2, 2024, a line-item entry included concurrently drafting direct and cross examination questions for 5.1 hours. *See* Ex. K. I thus will allocate that entry as evenly as possible, with 2.6 hours to direct examination and 2.5 hours to cross examination.

As for cross-examination, by my review of Mr. Berney's timesheets, it appears he spent approximately 25 hours preparing for cross-examination of six witnesses. *See* Ex. K. Defendant challenges 19.5 of those. *See* Opp. Ex. N. Twenty-five hours allocated for 6 witnesses is just over 4 hours per witness. I do not find this unreasonable and will not reduce the hours dedicated to preparing for cross-examination.

### xi. *Time related to the motion in limine.*

Defendant next challenges 8.9 hours spent on a motion in limine that Plaintiff brought before the administrative hearing and which Plaintiff lost. *See* Opp. at 17. Plaintiff brought the motion in limine before the Hearing Officer to "exclude IEPs that Colonial offered K.C. after she had already placed K.C. at AIM." Reply at 21. Upon review of the administrative record, *see* ECF No. 24-10 at 116-25, and Defendant's billing records, *see* Reply Ex. F, it appears that Defendant similarly moved to exclude certain pieces of evidence (albeit via email, but functionally the same as a motion in limine and ruled on—and denied by—the Hearing Officer as a motion to exclude). I thus will not consider such motion practices before the Hearing Officer frivolous. That being said, Defendant billed only 1.6 hours toward its informal motion to exclude evidence. *See* Reply Ex. F. at 21 (entries related to late disclosures), 23 (entry related to Motion to Exclude). Because an opposing party's analogous billing records can be considered in determining whether a party's time spent on a task is reasonable, *see E.H. v. Wissahickon Sch. Dist.*, No. 19-cv-5445, 2020 WL 6286709, at *5 (E.D. Pa. Oct. 27, 2020), I will consider Defendant's 1.6 hours spent on their motion to exclude evidence. I thus find that Plaintiff's counsel's 8.9 hours spent on a 5-page motion in limine is excessive, so I will reduce it by half—2.1 hours from Mr. Berney and 2.3 hours from Ms. Burrill-VanDellen.

    *xii. Time spent on the motion to compel the District's curricular documents.*

Next, Defendant objects to time spent on a motion to compel the Defendant's curricular documents as "unreasonable motions practice and unnecessary to Parent's burden at [the] hearing." Opp. at 17.  Mr. Berney spent 1.3 hours on this motion, and Ms. Burrill-VanDellen spent 1.4 hours. *Id.*  Defendant seeks to eliminate that entire time.  *Id.*  Upon review of the Hearing Officer record, *see* ECF No. 24-10 at 89-96, and Defendant's billing records *see* Reply Ex. F at 14, it appears that Defendant similarly engaged in litigation practice seeking two subpoenas and an order compelling the private school and Plaintiff an opportunity to conduct an observation of K.C. at the private school.  I do not find a total of 2.7 hours on a motion to compel the production of documents prior to the due process hearing unreasonable.

    *xiii. Time spent preparing the closing statement.*

Defendant next asks the Court to discount much of the time spent on preparing the closing statement as excessive.  *See* Opp. at 17.  Defendant asks the Court to reduce the time spent by 30.6 hours for Mr. Berney, 0.1 hours for Ms. Burrill-VanDellen, and 60 hours for Mr. Joseph.  *Id.* Plaintiff notes in response that in Defendant's Exhibit N detailing the challenged time entries, they include 7 hours of time for Mr. Berney that he had already voluntarily deducted.  *See* Reply at 18. My review shows that this is true, so I will treat Defendant's request as seeking to reduce Mr. Berney's time by 23.6 hours instead of 30.6 hours.

Defendant does not indicate how much time total each of these attorneys spent on the closing statement, but upon my review of the billing records to determine how many hours each Mr. Berney, Ms. Burrill-VanDellen, and Mr. Joseph spent on the closing statement, it appears Defendant would have me eliminate most, if not all, of the time these attorneys billed on the closing statement.  *See* Exs. K, O, V.

It is undisputed that Plaintiff's counsel billed over 80 hours on the closing statement, and I do not find that amount unreasonable, especially considering that Defense counsel also spent over 80 hours on their closing statement. *See* Ex. F at 25-30; *see also E.H.*, 2020 WL 6286709, at *5 ("A court may use the adverse party's billing records as relevant evidence to determine a reasonable number of hours for the services performed."). I therefore decline to reduce the hours Plaintiff's counsel spent on the closing statement.

*xiv. Time spent preparing the fee petition.*

Defendant next asks the Court to discount time spent on preparing the fee petition as excessive. *See* Opp. at 17. Specifically, Defendant seeks to eliminate 33.7 hours of Mr. Berney's time, 39.2 hours of Ms. Burrill-VanDellen's time, 0.5 hours of Ms. Diaz-Birca's time, and 0.6 hours of Mr. Joseph's time, for a total of 74 hours. *Id.* Upon review of Plaintiff's counsel's billing records, it would appear Defendant is requesting me to eliminate nearly all of the time spent on the fee petition. This cannot be, but I also find 74 hours for preparation of an initial fee petition to be slightly excessive. I will reduce both Mr. Berney's and Ms. Burrill-VanDellen's time spent on the fee petition by 10 hours each.

*xv. All time spent on the Right-to-Know request.*

Defendant asks the Court to eliminate all time spent on Plaintiff's Right-to-Know ("RTK") request, arguing that there is no fee-shifting provision of the RTK law and the IDEA does not provide for fees for such work. *See* Opp. at 17. Plaintiff filed the RTK request to obtain Defendant's billing invoices in order to use them as a comparison point to show the reasonableness of time Plaintiff's attorneys spent on this case. Reply at 21-22. Eventually, Plaintiff obtained the requested information when this Court granted a motion to compel its production, *see* ECF No. 28, holding that defense counsel's billing records were relevant "only to the extent they [could] be used to rebut Defendant's specific objections to Plaintiff's time billed as excessive," *see id.* at 2.

15

Although it took motion practice for Plaintiff to get Defendant's billing records, the RTK request was not frivolous, and was in fact a reasonable attempt to obtain the billings records. That said, Mr. Berney spent 2.9 hours on the RTK request, and Ms. Burrill-VanDellen spent 20.3 hours on it. I find that 23.2 hours is excessive for a RTK request, which can be completed through a 2-page form. *See How to File a Request*, Office of Open Records, https://www.openrecords.pa.gov/RTKL/HowToFile.cfm (last visited January 29, 2026). I will reduce the time spent on the RTK request to 5 hours total, deducting 0.4 hours from Mr. Berney and 17.8 hours from Ms. Burrill-VanDellen.

*xvi. Time spent seeking to obtain SSKW billing invoices.*[10]

When Plaintiff received only heavily redacted versions of Defendant's billing invoices from the RTK request, it first subpoenaed Defendant's insurance company for the invoices, and then filed a motion to compel with the Court. In granting the motion to compel in part, I held that "the subpoena directed to AIG [was] unreasonably duplicative." *See* ECF No. 28 at 3. For that reason, I similarly hold that the hours spent on the subpoena were unreasonably duplicative, and I will deduct the time spent on the subpoena to the insurance company. That results in a deduction of 2.2 hours from Mr. Berney and 0.5 hours from Ms. Burrill-VanDellen.

### D. Fees

In addition to attorneys' fees, Plaintiff seeks litigation costs and expert costs of $19,860.95, broken down as follows:

| Description | Amount |
|---|---|
| Felicia Hurewitz, Ph.D./B.C.B.A. expert costs | $9,733.50 |
| Alexis Rosenfeld, Ph.D. expert costs | $8,218.75 |
| Karen Clapper, SLP expert costs | $1,125.00 |
| Federal filing fee | $405 |
| Copy fees for exhibits | $293.70 |
| Subpoena service fee | $85.00 |

---

[10] Defendant uses the word "scheming." I find this inappropriate.

Defendant only objects to the expert witness fees and does not dispute the court costs. *See* Opp. at 3 n.8. Defendant first argues that expert fees are not recoverable under the IDEA. *Id.* at 18. But, as Plaintiff argues, and as Courts have held, when a hearing officer addresses Section 504 and IDEA claims coextensively, as she did here, the prevailing party may recover expert fees pursuant to Section 504 rather than IDEA. *See Central Bucks Sch. Dist. v. Q.M.*, No. 22-cv-1128, 2022 WL 17339037, at *17 (E.D. Pa. Nov. 29, 2022). Therefore, I hold that Plaintiff may recover expert fees pursuant to Section 504.

Defendant next objects to the recovery of expert fees because the Hearing Officer did not rely on the experts in making her decision. Opp. at 18. But as I noted above, it is of no matter that the Hearing Officer did not rely on the experts, as the experts were still useful to Plaintiff's counsel in successfully litigating the case.

Defendant does not specifically object to the reasonableness of the expert's hourly rates or time spent, as set forth in the billing invoices included in Exhibit U of the Motion for Attorneys' Fees. Accordingly, I have no reason to believe the expert fees are unreasonable and will not "decrease a fee award based on factors not raised at all by the adverse party." *See McKenna v. City of Philadelphia*, 582 F.3d 447, 459 (3d Cir. 2009) (internal quotation omitted).

### E. Responsive Briefing and Oral Argument on the Fee Petition

Plaintiff additionally seeks attorneys' fees for the time spent preparing the Reply brief following Defendant's Opposition brief, as well as time spent preparing for and attending oral argument on the Motion. As for time spent on the Reply brief, Plaintiff seeks reimbursement for 78.4 hours of work by Mr. Berney and 109.1 hours of work by Ms. Burrill-VanDellen, totaling $53,704 and $34,366.50, respectively. Defendant has not contested the reasonableness of these hours, and I find it acceptable that Plaintiff's counsel spent more time on their reply brief than on their initial Motion, as they were required to consider Defendant's numerous arguments as to why

fees were unreasonable and sift through over 1,000 pages of exhibits presented by Defendant. I will thus award the fees requested for Plaintiff's Reply brief, adjusted for Ms. Burrill-VanDellen's rate of $300.

Finally, after oral argument on the fee petition, Plaintiff seeks an additional $19,472 for time spent preparing for and participating in the oral argument. Specifically, Plaintiff seeks reimbursement from Mr. Berney for 23 hours, totaling $15,755, and 11.8 for Ms. Burrill-VanDellen, totaling $3,717. Defendant similarly does not contest this time spent, and I find this a reasonable amount of time spent preparing for and participating in oral argument. I further note that oral argument was held at Defendant's request as raised in its Opposition brief, *see* Opp. at 23, so I will not prevent Plaintiff from recovering from expenses incurred at Defendant's behest. I will thus award the fees requested for oral argument, adjusted for Ms. Burrill-VanDellen's rate of $300.

## III.    CONCLUSION

For the reasons discussed more fully above, I will award Plaintiff attorney's fees as follows:

| Attorney | Hourly Rate | Time Spent on Fee Petition (requested-deduction) | Time Spent on Reply Brief | Time Spent on Oral Argument | Total |
|---|---|---|---|---|---|
| Berney | $685 | 484.9 – 28.6 = 456.3 | 78.4 | 23 | $382,024.50 |
| Joseph | $315 | 60.6 – 0 = 60.6 | 0 | 0 | $19,089.00 |
| Burrill-VanDellen | $300 | 162.4 – 31.2 = 131.2 | 109.1 | 11.8 | $75,630.00 |
| Diaz-Birca | $260 | 17.4 – 5 = 12.4 | 0 | 0 | $3,224.00 |
| | | | | | **$479,967.50** |

In addition to attorneys' fees of $479,967.50, I will award expert fees and court costs of $19,860.95, for a total award of $499,828.50.

An appropriate Order follows.